ACCEPTED
15-24-00040-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
4/10/2025 8:54 AM
CHRISTOPHER A. PRINE
CLERK

## HAYNES BOONE

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS

4/10/2025 8:54:51 AM

CHRISTOPHER A. PRINE
Clerk

April 10, 2025

*Via Electronic Filing and FedEx*

Christopher A. Prine
Clerk of Court
Fifteenth Court of Appeals
William P. Clements Building
P.O. Box 12852
Austin, TX 78701

**Re:** *State of Texas v. Yelp Inc.*, No. 15-24-00040-CV
**Fourth Notice of Supplemental Authority**

Dear Mr. Prine:

Appellee Yelp Inc. ("Yelp") submits this Fourth Notice of Supplemental Authority ("Notice") concerning a recent case from the Fourteenth Court of Appeals involving similar facts and issues that arose during oral argument and that are addressed in the parties' briefs.

Yelp respectfully requests that a copy of this Notice be provided to Chief Justice Scott Brister, Justice Scott Field, and Justice April Farris.

**I.** *Certain Underwriters at Lloyd's v. Henry Vogt Machine Co. Inc.*, **No. 14-23-00590-CV, No. 14-23-00591-CV, No. 14-23-00592-CV, No. 14-23-00601-CV, 2025 WL 1033951 (Tex. App.—Houston [14th Dist.] Apr. 8, 2025, no pet. h.) (Ex. A)**

In *Certain Underwriters*, a corporation, through its trustee, filed a petition for declaratory judgment against dozens of insurers seeking a declaration that more than 74 insurance policies would cover the costs of asbestos litigation brought against the corporation in Texas. *Id.* at *1. The trial court denied six special appearances filed by 11 out-of-state insurers, some of which had registered to do business in Texas under chapter 9 of the Business Organizations Code. *Id.* at *9-10, 12.

On appeal, the trustee argued that by registering to do business in Texas, the insurers consented to the exercise of personal jurisdiction by Texas courts in *any* case filed in Texas, primarily relying on Tex. Bus. Org. Code § 9.202 and *Mallory v. Norfolk Southern Railway Company*, 600 U.S. 122 (2023). *Id.* at *4. In this case, the State of Texas ("State") raised the same argument and relied on the same sources as the trustee. App. Br. at x, 1, 7, 12–21.

In *Certain Underwriters*, the Fourteenth Court of Appeals rejected the trustee's argument and held that under the "unambiguous language" of § 9.202 and the operative case law, an entity does *not* consent to personal jurisdiction in Texas by registering to do business there. *Id.* at *8.

**Haynes and Boone, LLP** | 98 San Jacinto Ave.| Suite 1500 | Austin, TX 78701
т: 512.867.8400 | haynesboone.com

The Court first explained that § 9.202, which provides that "[a] foreign nonfiling entity or a foreign filing entity registered under this chapter enjoys the same but no greater rights and privileges as the domestic entity to which it most closely corresponds," does not provide that by registering to do business in Texas a foreign entity consents to the exercise of personal jurisdiction by any Texas court. *Id*. at *5. Taking the trustee's (and the State's) argument to its logical conclusion, a "foreign nonfiling entity," such as a corporation formed in the Republic of Maldives, would nevertheless consent to personal jurisdiction in Texas under § 9.202, even if it only does business in that country and has not registered to do business in Texas. *Id*. Such an interpretation of § 9.202 is unreasonable under the statute's "unambiguous language." *Id*.

So too is the trustee's (and the State's) interpretation of *Mallory*, which is distinguishable for many reasons. *Id*. at *7. The Court explained that (1) *Mallory* does not involve chapter 9 of the Code; (2) unlike chapter 9, the Pennsylvania law at issue in *Mallory* specifically provided that "'qualification as a foreign corporation' shall permit [Pennsylvania] courts to 'exercise general personal jurisdiction' over a registered foreign corporation, just as they can over domestic corporations;" (3) the only issue in *Mallory* was whether the Pennsylvania statute violated the Due Process Clause of the U.S. Constitution; and (4) the *Mallory* majority expressly stated that it "need not speculate whether any other statutory scheme and set of facts would suffice to establish consent to suit." *Id*. Thus, Mallary is "not on point" in determining whether a business consents to personal jurisdiction in Texas by registering to do business there. *Id*.

Yelp has similarly argued that *Mallory* does not apply for the same reasons cited by the Fourteenth Court of Appeal, among others. Yelp's Brief at 24–36.

For the above reasons, this Court should adopt the well-reasoned analysis of the Fourteenth Court of Appeal and hold that Yelp has not consented to personal jurisdiction in Texas by registering to do business there.

Respectfully submitted,

Laura Lee Prather
Partner, Haynes and Boone, LLP
Laura.prather@haynesboone.com
Direct Phone Number: (512) 867-8476
Direct Fax Number: (512) 867-8609

Attorney for Appellee Yelp Inc.

# EXHIBIT A

2025 WL 1033951
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN RELEASED
FOR PUBLICATION IN THE PERMANENT
LAW REPORTS. UNTIL RELEASED, IT IS
SUBJECT TO REVISION OR WITHDRAWAL.

Court of Appeals of Texas, Houston (14th Dist.).

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON AND CERTAIN LONDON MARKET
INSURANCE COMPANIES, AMERICAN
HOME ASSURANCE COMPANY, GENERAL
REINSURANCE CORPORATION, CENTURY
INDEMNITY COMPANY, SUCCESSOR TO CIGNA
SPECIALTY INSURANCE COMPANY F/K/A
CALIFORNIA UNION INSURANCE COMPANY,
OAKWOOD INSURANCE COMPANY, SUCCESSOR
TO CENTRAL NATIONAL INSURANCE COMPANY
OF OMAHA, MUNICH REINSURANCE AMERICA,
INC., FORMERLY KNOWN AS AMERICAN
RE-INSURANCE COMPANY (IMPROPERLY
PLEAD HEREIN AS "AMERICAN EXCESS
INSURANCE COMPANY, NOW KNOWN AS
EXECUTIVE RISK INDEMNITY, INC."), FIRST
STATE INSURANCE COMPANY, HARTFORD
CASUALTY INSURANCE COMPANY, HARTFORD
FIRE INSURANCE COMPANY, AND TWIN
CITY FIRE INSURANCE COMPANY, Appellants
v.
HENRY VOGT MACHINE CO., INC., BY
AND THROUGH ITS DULY APPOINTED
TRUSTEE, ROBERT L. PENDERGRAFT, Appellee

NO. 14-23-00590-CV, NO. 14-23-00591-CV,
NO. 14-23-00592-CV, NO. 14-23-00601-CV
|
Opinion filed April 8, 2025.

**On Appeal from the 11th District Court**

**Harris County, Texas**

**Trial Court Cause No. 2004-03964 (MDL Cause No.)**

Panel consists of Chief Justice Christopher and Justices
Wilson and Bridges.

**OPINION**

Randy Wilson Justice

**\*1 Affirmed in Part, Reversed and Remanded in Part,
and Opinion filed April 8, 2025.**

In this consolidated appeal, 33 Lloyd's of London syndicates, 5 London Market Companies, and 9 American insurers appeal the trial court's order denying their special appearances in a case in which the plaintiff seeks declaratory relief regarding at least 74 insurance policies issued to a Kentucky corporation between 1967 and 2014. As to the Lloyd's of London syndicates, the London Market Companies, and two of the American insurers, we conclude that the trial court did not err by impliedly denying their special appearances based on service-of-suit clauses in the relevant insurance policies. As to the other seven American insurers, we conclude that these insurers have not shown that the trial court erred to the extent that it denied their special appearances as to declaratory-judgment claims regarding certain asbestos cases filed in Texas, and we affirm to this extent. As to the remainder of the declaratory-judgment claims filed against the other seven American insurers, we conclude that the trial court erred in denying their special appearances, and we reverse and remand to this extent.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Henry Vogt Machine Co. ("Vogt") was incorporated in Kentucky in 1890 and had its principal place of business in Louisville, Kentucky. Vogt manufactured and sold various products, such as valves and boilers, that required high-temperature insulation. Starting in the early part of the twentieth century and continuing through the 1980s, Vogt included asbestos-containing component parts in these products as insulating materials. In 1989 Vogt was first named as a defendant in a lawsuit filed by a plaintiff alleging injury from exposure to asbestos contained in a product manufactured by Vogt. Additional lawsuits followed and by late 2004, Vogt was named as a defendant in about 975 separate lawsuits filed by a total of about 59,000 plaintiffs in 16 states. By September 2012 those numbers grew to approximately 2,000 lawsuits filed by about 10,800 plaintiffs [1] in 30 states, and Vogt filed a bankruptcy petition

in the United States Bankruptcy Court for the Western District of Kentucky ("Bankruptcy Case").

In December 2014 the bankruptcy judge signed an order approving Vogt's Chapter 11 amended plan of liquidation ("Plan"). The Plan provided for a "Creditor's Trust" meaning "a trust established for the benefit of the Unsecured Tort Creditors and which will be administered by a Trustee designated by [the Provost, Umphrey, LLP law firm], and into which the Insurance Policies and all associated claims, rights and property interests of every kind and nature will be assigned." The Plan provides that on its effective date "the Insurance Policies and all associated rights thereto shall vest in the Creditors' Trust, free and clear of Liens, claims and encumbrances and the Debtor shall be deemed without further action to have assigned the assets and property interests comprising the Insurance Policies to the Creditors' Trust free and clear of any and all liens, claims and encumbrances." As of the Plan's effective date "the Creditors' Trust and/or the [Trustee for the Creditors' Trust] shall be vested and automatically be conferred with, and have all of the power, authority and standing, and shall be the sole authorized Person with such authority and standing, to take any and all actions that were previously vested in the Debtor or the Estate with respect to the Insurance Policies and shall [ ] automatically be conferred with and have authority and standing, and shall be the sole authorized Person with authority and standing, to take any and all actions that were previously vested in the Debtor, or the Estate and stand in the same position as the Debtor or the estate with respect to any claim the Debtor may have to the Insurance Policies."

 **\*2**  The Plan provided that upon entry of an order of the Bankruptcy Court closing the Chapter 11 Case, and without any need for any further actions or approvals, Vogt would be deemed formally dissolved, wound-down, and liquidated pursuant to Kentucky Revised Statutes Chapter 271B.14 and other applicable law. An order of the Bankruptcy Court closing the Bankruptcy Case was entered in 2015. The Kentucky Secretary of State administratively dissolved Vogt in 2016 based on Vogt's failure to file its 2016 annual report.

On March 16, 2023, appellee/plaintiff Henry Vogt Machine Co., Inc., by and through its duly appointed trustee, Robert L. Pendergraft ("Trustee") filed "Plaintiff's Original Petition for Declaratory Judgment" ("Petition") seeking only nonmonetary, declaratory relief against the following defendants: (1) Republic Insurance Company, now known as Starr Indemnity & Liability Company ("Republic");

(2) Munich Reinsurance America, Inc., formerly known as American Re-insurance Company, claiming that it was improperly sued as "American Excess Insurance Company, now known as Executive Risk Indemnity, Inc." ("Munich"); (3) American Home Assurance Company ("American Home"); (4) Century Indemnity Company, successor to Cigna Specialty Insurance Company, f/k/a California Union Insurance Company ("Century"); (5) Oakwood Insurance Company, successor to Central National Insurance Company of Omaha ("Oakwood"); (6) First State Insurance Company ("First State"); (7) Hartford Casualty Insurance Company ("Hartford Casualty"); (8) Hartford Fire Insurance Company ("Hartford Fire"); (9) Twin City Fire Insurance Company ("Twin City"); (10) General Reinsurance Corporation ("General Re"); (11) Certain Underwriters at Lloyd's, London, Syndicate Numbers 035, 056, 090, 099, 126, 160, 175, 205, 210, 243, 250, 276, 279, 346, 365, 404, 408, 452, 471, 506, 510, 518, 553, 604, 618, 620, 661, 694, 701, 918, 948, 989, 1071 (collectively the "Underwriters"); and (12) Certain London Market Companies: Assicurazioni Generali, Catalina Worthing Insurance Ltd. f/k/a HFPI (as Part VII transferee of Excess Insurance Company Ltd. and/or London & Edinburgh Insurance Company Ltd. as successor to London & Edinburgh General Insurance Company Ltd.), Dominion Insurance Company Ltd., Unionamerica (as statutory successor in interest to certain business of St. Paul Travelers Insurance Company Limited, formerly known as St. Paul International Insurance Company Limited and St. Katherine Insurance Company PLC), Tenecom Limited (successor to Winterthur Swiss Insurance Company, formerly Accident & Casualty Insurance Company), and Tenecom Limited (f/k/a Yasuda Fire & Marine Insurance Company (UK) Limited and Yasuda Fire & Marine Insurance Company of Europe Limited) (collectively the "London Market Companies").

The term "Asbestos Suits," as used in the Petition, means "[c]laims, suits, actions, causes of action, and demands [that] have been asserted against [Vogt] and [that] likely will be asserted against Vogt in the future, alleging exposure to materials or products allegedly containing or incorporating elements, minerals, or other substances, including without limitation asbestos and other materials contained in, used with, or associated with products allegedly manufactured, sold, or distributed by [Vogt], which suits arise out of single cause of causative agency (collectively "All Asbestos Suits"). In the Petition the Trustee asserts that Vogt has insurance policies that remain responsive to All Asbestos Suits and that he seeks declarations "making these policies and their

limits of liability fully available to meet Vogt's defense and indemnity costs in [All Asbestos Suits], as those terms are understood in the insurance business." The Trustee lists 74 insurance policies issued by one or more of the defendants between 1967 and 2014, and the Trustee alleges that each of the policies is "responsive to [All Asbestos Suits]." The Trustee alleges that he has satisfied, will be deemed to have satisfied, or has been or will be relieved from satisfying all terms and conditions of these 74 policies, including without limitation payment of premiums, satisfaction or relief from satisfying all deductibles, self-insured retentions, and underlying limits of these policies, and that the Trustee is entitled to the full benefit of the insurance.

**\*3**  The Multidistrict Litigation Panel transferred this case to the 11th Judicial District Court of Harris County as a tag-along case to Cause No. 2004-03964 pending before Judge Mark Davidson. Republic, a Texas corporation, answered and did not file a special appearance. Appellees/defendants First State, Hartford Casualty, Hartford Fire, and Twin City (collectively the "Hartford Parties") filed a special appearance with attached evidence. Appellees/defendants Century and Oakwood (collectively the "Century Parties") filed a special appearance with attached evidence. Appellees/defendants Munich, American Home, and General Re each filed a special appearance with attached evidence. Appellees/defendants the Underwriters and the London Market Companies (collectively the "London Market Insurers") filed a special appearance with attached evidence.

The Trustee filed a single "Omnibus Response" in opposition to the six special appearances, along with attached evidence. Various defendants filed replies to the Trustee's response, and the Trustee filed a supplemental opposition to the special appearances. The trial court signed an order denying the six special appearances.

The Century Parties, Munich, the London Market Insurers, American Home, General Re, and the Hartford Parties (collectively the "Insurers") timely filed four separate interlocutory appeals from the trial court's denial of their respective special appearances. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (West, Westlaw through 2023 4th C.S.). This court consolidated the four appeals for purposes of briefing and submission on appeal.

## II. STANDARD OF REVIEW

Whether each of the appellants is subject to personal jurisdiction in Texas is a question of law subject to de novo review. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). The trial court did not issue any findings of fact or conclusions of law. Therefore, all facts necessary to support the trial court's ruling and supported by the evidence are implied in favor of the trial court's decision. *Id.* at 795. The Insurers can challenge the legal and factual sufficiency of these implied factual findings. *Id.* In conducting a legal-sufficiency analysis, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The factfinder is the sole judge of the credibility of the witnesses and the weight of their testimony. *See id.* at 819.

## III. ISSUE AND ANALYSIS

On appeal each of the Insurers argues that the trial court erred in denying its respective special appearance. The Texas long-arm statute allows a court to exercise personal jurisdiction as far as the federal constitutional requirements of due process will permit. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041–.045 (West, Westlaw through 2023 4th C.S.); *BMC Software*, 83 S.W.3d at 795. The plaintiff bears the initial burden to plead allegations sufficient to bring the nonresident defendant within the reach of the Texas long-arm statute. *See Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 559 (Tex. 2018). If the plaintiff does so, the defendant then bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *Id.* The plaintiff may plead allegations regarding the long-arm statute or allege bases of personal jurisdiction in either the plaintiff's live petition or in a response in opposition to the special appearance. *See Washington DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 738 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (en banc); *Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2011, no pet.). The defendant may negate personal jurisdiction on either a factual or legal basis. The defendant may present evidence that contradicts the plaintiff's factual allegations supporting the assertion of personal jurisdiction, and the plaintiff may then respond with its own evidence

supporting its allegations. *See Horowitz v. Berger*, 377 S.W.3d 115, 121 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Or the defendant may show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish personal jurisdiction. *Old Republic Nat'l Title Ins. Co.*, 549 S.W.3d at 559.

**A. By registering to do business in Texas under chapter 9 of the Business Organizations Code did some of the Insurers impliedly consent to the exercise of personal jurisdiction over them by Texas courts in all cases filed in Texas?**

**\*4** Consent is an established basis for a trial court to exercise personal jurisdiction consistent with due process, and a variety of legal arrangements have been taken to represent express or implied consent to the trial court's exercise of personal jurisdiction. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703–04 (1982). On appeal the Trustee argues that by registering to do business in Texas under chapter 9 of the Business Organizations Code ("Code") Munich, American Home, Century, Oakwood, General Re, Hartford Casualty, Hartford Fire, and Twin City (collectively the "Registered Insurers") impliedly consented to the exercise of personal jurisdiction over them by Texas courts in any case filed in Texas. *See* Tex. Bus. Organs. Code Ann. § 9.001, *et seq.* (West, Westlaw through 2023 4th C.S.). The Trustee contends that section 9.202 of the Code ("Section 9.202") explicitly states that Texas requires out-of-state corporations to consent to suit in Texas courts on any and all claims as a condition of doing business in Texas. *See id.* § 9.202 (West, Westlaw through 2023 4th C.S.).

We first address whether the Trustee alleged this basis of personal jurisdiction in the trial court and whether we should address the argument on appeal. The Insurers only had to negate the bases of personal jurisdiction that the Trustee alleged against them. *See Old Republic Nat'l Title Ins. Co.*, 549 S.W.3d at 559. The Insurers and this court need not address any potential basis of personal jurisdiction not alleged by the Trustee in the trial court. *See Trigeant Holdings, Ltd. v. Jones*, 183 S.W.3d 717, 721, n.1 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). The only allegation the Trustee made in the Petition about the registration of the Registered Insurers was that the insurer "is registered to do business in Texas and may be served with process through its agent, [reciting the respective name and address of the defendant's agent for service of process in Texas]." These allegations appear to address service of process, not consent to personal

jurisdiction. The Trustee did not allege in the trial court that by registering to do business in Texas under chapter 9 of the Code any of the Insurers had impliedly consented to the exercise of personal jurisdiction over them by Texas courts.

The Trustee relies on *Mallory v. Norfolk Southern Railway Company*, 600 U.S. 122 (2023) in making the argument that by registering to do business in Texas a corporation impliedly consents to the exercise of personal jurisdiction over the corporation by Texas courts in any case filed in Texas ("Implied Consent Argument"). Though *Mallory* was decided on June 27, 2023, the Implied Consent Argument existed before that date and before the Trustee filed this suit in March of 2023. Thus, the Implied Consent Argument was available to the Trustee when he made his allegations regarding personal jurisdiction. Nonetheless, we presume, without deciding, that the Trustee's allegation that certain defendants had registered to do business in Texas was sufficient to allege the Implied Consent Argument, and we now address the merits of this argument.

The Implied Consent Argument relies on Section 9.202, which, according to the Trustee, explicitly states that Texas requires out-of-state corporations to consent to suit in Texas on any and all claims as a condition of doing business in Texas. *See* Tex. Bus. Organs. Code Ann. § 9.202. The parties have not cited and research has not revealed any case addressing whether the Trustee's interpretation of Section 9.202 is correct. In construing a statute, our objective is to determine and give effect to the Legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). If possible, we must ascertain that intent from the language the Legislature used in the statute and not look to extraneous matters for an intent the statute does not state. *Id.* If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997). We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words the Legislature chose. *See id.*

**\*5** To transact business in Texas foreign corporations must register under chapter 9 of the Code. *See* Tex. Bus. Organs. Code Ann. § 1.002(28) (West, Westlaw through 2023 4th C.S.); § 9.201(a) (West, Westlaw through 2023 4th C.S.). The Registered Insurers are foreign corporations that have registered to do business in Texas; thus each of them is a foreign filing entity as that term is used in chapter 9. *See* Tex. Bus. Organs. Code Ann. § 1.002(29) (West, Westlaw through

2023 4th C.S.) (defining "foreign filing entity" as "a foreign entity, other than a foreign limited liability partnership, that registers or is required to register as a foreign entity under Chapter 9"). Section 9.202 provides that "[a] foreign nonfiling entity or a foreign filing entity registered under this chapter enjoys the same but no greater rights and privileges as the domestic entity to which it most closely corresponds." *Id.* § 9.202. The Trustee argues that under Section 9.202 foreign filing entities registered under chapter 9 are subject to general jurisdiction in lawsuits filed in Texas courts because domestic entities are subject to general jurisdiction in these cases and foreign filing entities enjoy the same rights and privileges as domestic entities. We disagree.

Section 9.202 applies to both foreign nonfiling entities and foreign filing entities. *See id.* Section 9.202 does not provide that by registering to do business in Texas a foreign entity consents to the exercise of personal jurisdiction by any Texas court. The definition of "foreign filing entity" includes foreign entities that are required to register because they transact business in Texas but that have not registered. *See* Tex. Bus. Organs. Code Ann. §§ 1.002(29), 9.201(a). If having the same rights and privileges as a domestic entity meant that all foreign filing entities consented to the exercise of personal jurisdiction over them by Texas courts in any case filed in Texas, then all foreign entities that have done any business in Texas, no matter how small the amount, would be deemed to have consented to the exercise of personal jurisdiction over them by Texas courts in any case filed in Texas, even as to cases not based on the entities' Texas business contacts and no matter how limited their Texas contacts. *See id.* § 1.002(29), 9.001, 9.202.

In addition, if having the same rights and privileges as a domestic entity meant that all foreign filing entities consented to the exercise of personal jurisdiction over them by Texas courts in any case filed in Texas, it would have the same meaning for foreign nonfiling entities. A "foreign entity" means any organization formed under or governed by the laws of a jurisdiction other than Texas. *See id.* § 1.002(28). Thus, under the Trustee's interpretation, a corporation formed in the Republic of Maldives,[2] that only does business in that country and has not registered to do business in Texas, has nevertheless consented to personal jurisdiction in Texas under Section 9.202. *See id.* § 1.002(31), 9.001, 9.202.

It would not be reasonable to interpret Section 9.202 as providing that (1) foreign entities transacting minimal amounts of business in Texas and not registering to do

business in Texas consent to the exercise of personal jurisdiction over them by any Texas court in any Texas case; or (2) foreign entities that do not transact any business in Texas and that are not registered to do business in Texas consent to the exercise of personal jurisdiction over them by any Texas court in any Texas case.[3] Under its unambiguous language, Section 9.202 does not provide that foreign entities consent to the exercise of personal jurisdiction over them by Texas courts in any suit filed in Texas as a condition of doing business in Texas or as a consequence of having registered to do business in Texas under chapter 9. *See* Tex. Bus. Organs. Code Ann. § 9.202; *Morris v. Kansas City Ry.*, No. 2:24-CV-00018-JRG, 2024 WL 3347379, at \*3–4 (E.D. Tex. Jul. 8, 2024) (holding that a foreign entity does not impliedly consent to the exercise of personal jurisdiction over the entity in Texas courts by registering to do business in Texas); *iMed Tech., Inc. v. Teleflex, Inc.*, No. 3:19-CV-1861-(BK), 2020 WL 2106354, at \*4 (N.D. Tex. Apr. 13, 2020); (holding that the mere fact that two foreign corporations are registered to do business in Texas does not confer on Texas courts the ability to exercise personal jurisdiction over these corporations); *Repairify, Inc. v. Opus IVS, Inc.*, No. 05-23-00921-CV, 2024 WL 2205663, at \*1 (Tex. App.—Dallas May 16, 2024, no pet.) (holding that by registering to do business in Texas a foreign corporation did not consent to the exercise of personal jurisdiction over the corporation by Texas courts based on general jurisdiction).

**\*6** Having reviewed the entirety of chapter 9 of the Code, we conclude that, under its unambiguous language, chapter 9 does not provide that foreign entities consent to the exercise of personal jurisdiction over them by Texas courts in any suit filed in Texas as a condition of doing business in Texas or as a consequence of having registered to do business in Texas under chapter 9. *See* Tex. Bus. Organs. Code Ann. § 9.001, *et seq.* Thus, a foreign entity's registration to do business in Texas under chapter 9 does not constitute an express or implied consent by the entity to the exercise of personal jurisdiction over the foreign entity in any case. *See* Tex. Bus. Organs. Code Ann. § 9.001, *et seq.*; *Morris*, 2024 WL 3347379, at \*3–4; *iMed Tech., Inc.*, 2020 WL 2106354, at \*4; *Repairify, Inc.*, 2024 WL 2205663, at \*1.

In support of his Implied Consent Argument the Trustee relies on *Goldman v. Pre-Fab Transit Company*, a case in which this court held that under article 8.02 of the former Texas Business Corporations Act ("Article 8.02"), in return for the privilege of doing business in Texas and enjoying the same rights and privileges as a Texas corporation, foreign corporations

impliedly consented to the exercise of personal jurisdiction over them in all lawsuits against them in Texas courts. *See* 520 S.W.2d 597, 598 (Tex. Civ. App.—Houston [14th Dist.] 1975, no writ). The First Court of Appeals agreed with the *Goldman* holding in *Acacia Pipeline Corp. v. Champlin Exploration, Inc. See* 769 S.W.2d 719, 719–20 (Tex. App.—Houston [1st Dist.] 1989, no writ). Other courts disagreed with *Goldman. See, e.g., Leonard v. USA Petroleum Corp.*, 829 F.Supp. 882, 887 (S.D. Tex. 1993) (disagreeing with *Goldman*); *Asshauer v. Glimcher Realty Trust*, 228 S.W.3d 922, 933 (Tex. App.—Dallas 2007, no pet.) (disagreeing with *Goldman* holding). The parties have not cited and research has not revealed a case in which the Supreme Court of Texas has resolved this conflict.

The Insurers point to the following statements in the plurality opinion in *Conner v. ContiCarriers & Terminals, Inc.*: "*Goldman*, however, is unsupported by *any* relevant case law, and we find it is in conflict with binding U.S. Supreme Court precedent. We find *Goldman*, therefore, to be wrongly decided." 944 S.W.2d 405, 416 (Tex. App.—Houston [14th Dist.] 1997, no writ) (plurality op.). Although some of the Insurers attribute these statements to this court and although the plurality opinion uses the pronoun "we," these statement were made by a single justice in a plurality opinion and thus are not statements by this court. *See id.* at 409, 416, 420. Even if these statements were made in a unanimous panel opinion, the *Conner* panel had no authority to overrule *Goldman*; only the en banc court has that authority. *See Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022); *Glassman v. Goodfriend*, 347 S.W.3d 772, 781 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (en banc). Thus, the *Conner* plurality opinion did nothing to diminish the *Goldman* opinion's status as a binding precedent in this court. *See Mitschke*, 645 S.W.3d at 256; *Glassman*, 347 S.W.3d at 781.

Under the doctrine of horizontal stare decisis, whether or not we agree with the *Goldman* holding, this court is bound to apply that holding absent (1) a decision from the Supreme Court of the United States, the Supreme Court of Texas, or this court sitting en banc which is on point and contrary to the *Goldman* holding; or (2) an intervening and material change in the statutory law. *See Mitschke*, 645 S.W.3d at 256; *Glassman*, 347 S.W.3d at 781. The *Goldman* court interpreted and applied the Texas Business Corporations Act; it did not interpret chapter 9 of the Code. *See Goldman*, 944 S.W.2d at 416. The Code became applicable to some business entities starting on January 1, 2006, and to all business entities starting on January 1, 2010, the date on which the Texas Business

Corporations Act expired. *See Phillips v. United Heritage Corp.*, 319 S.W.3d 156, 163, n.5 (Tex. App.—Waco 2010, no pet.). The first part of Article 8.02 of the Texas Business Corporation Act, which contains some language similar to that in Section 9.202, provided as follows:

**\*7** A foreign corporation which shall have received a certificate of authority under this Act shall, until its certificate of authority shall have been revoked in accordance with the provisions of this Act or until a certificate of withdrawal shall have been issued by the Secretary of State as provided in this Act, enjoy the same, but no greater, rights and privileges as a domestic corporation organized for the purposes set forth in the application pursuant to which such certificate of authority is issued....

*See* Act of Mar. 30, 1955, 54th Leg., R.S., ch. 64, art. 8.02, 1955 Tex. Gen. Laws 239, 296, *amended* (1975, 1985, 1989), *expired* Jan. 1, 2010, Act of May 13, 2003, 78th Leg., R.S., ch. 182, § 2, 2003 Tex. Gen. Laws 267, 595 (formerly codified at Tex. Bus. Corp. Act Ann. art. 8.02). This statute differs in various respects from Section 9.202. Most significantly, neither Article 8.02, nor any other part of the Texas Business Corporations Act made Article 8.02 applicable to foreign corporations that have not transacted any business in Texas and that have not received a certificate of authority to do business in Texas under the Texas Business Corporations Act. *See id.* Section 9.202 applies to foreign entities that do not transact any business in Texas and that are not registered to do business in Texas. *See* Tex. Bus. Organs. Code Ann. § 9.202. We conclude that the enactment of the Code, including Section 9.202 was an intervening and material change in the statutory law. *See Taylor v. First Cmty. Credit Union*, 316 S.W.3d 863, 869 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Therefore, the *Goldman* holding is not on point, and we are not bound to apply that holding in this case. *See Mitschke*, 645 S.W.3d at 256; *Glassman*, 347 S.W.3d at 781.

The Trustee also relies on the decision of the Supreme Court of the United States in *Mallory v. Norfolk Southern Railway Company. See* 600 U.S. 122 (2023). According to the Trustee, *Mallory* establishes that by registering to do business in Texas the Registered Insurers impliedly consented to personal

jurisdiction in Texas. That is not correct. *Mallory* did not involve chapter 9 of the Code. *See id.* at 134. Similar to chapter 9 of the Code, the Pennsylvania law involved in *Mallory* provided "that an out-of-state corporation 'may not do business in this Commonwealth until it registers with' the Department of State." *Id.* (quoting 15 Pa. Cons. Stat. § 411(a)). Unlike chapter 9, Pennsylvania has a statute that expressly states that " 'qualification as a foreign corporation' shall permit [Pennsylvania] courts to 'exercise general personal jurisdiction' over a registered foreign corporation, just as they can over domestic corporations." *Id.* (quoting 42 Pa. Cons. Stat. § 5301(a)(2)(i)). The Supreme Court of the United States lacks authority to interpret state statutes; instead the only issue before the high court in *Mallory* was whether these Pennsylvania statutes violated the Due Process Clause of the United States Constitution. *See id.* at 125–26. In *Mallory* five justices rejected Norfolk Southern's argument that these Pennsylvania statutes violated the Due Process Clause. *See id.* at 135–36. Justice Alito wrote separately joining four of his colleagues only as to Parts I and III–B of Justice Gorsuch's opinion. *See id.* at 163 (Alito, J., concurring in part and concurring in the judgment). The *Mallory* majority noted that Norfolk Southern "concedes that it registered to do business in Pennsylvania, that it established an office there to receive service of process, and that in doing so it understood it would be amenable to suit on any claim." *Id.* at 135. The *Mallory* majority stated that "[t]o decide this case, we need not speculate whether any other statutory scheme and set of facts would suffice to establish consent to suit." *Id. Mallory* is not on point in our analysis of chapter 9 of the Code. *See Morris*, 2024 WL 3347379, at *3–4; *Repairify, Inc.*, 2024 WL 2205663, at *1.

**\*8** As a matter of law and under the unambiguous language of Section 9.202 and chapter 9 of the Code, by registering to do business in Texas the Registered Insurers did not impliedly consent to the exercise of personal jurisdiction over them by Texas courts in all cases filed in Texas. [4] *See* Tex. Bus. Organs. Code Ann. § 9.001, *et seq.*; *Morris*, 2024 WL 3347379, at *3–4; *iMed Tech., Inc.*, 2020 WL 2106354, at *4; *Repairify, Inc.*, 2024 WL 2205663, at *1.

**B. Did the Trustee plead sufficient allegations to bring the Insurers within the Texas long-arm statute?**

We now consider whether the Insurers were entitled to have the Trustee's claims dismissed for lack of personal jurisdiction because the Trustee did not plead sufficient allegations to bring any of the Insurers within the reach of the Texas long-

arm statute, and each of the Insurers showed that it is not a Texas resident. Numerous precedents state that the plaintiff bears the initial burden to plead allegations sufficient to bring the nonresident defendant within the reach of the Texas long-arm statute. *See, e.g., Old Republic Nat'l Title Ins. Co.*, 549 S.W.3d at 559. None of the Insurers was served under the Texas long-arm statute. Instead, the Insurers were served with process by either serving their registered agent for service of process in Texas or by serving the Texas Commissioner of Insurance as the insurer's agent for service of process. *See* Tex. Bus. Organs. Code Ann. § 5.201 (West, Westlaw through 2023 4th C.S.); Tex. Ins. Code Ann §§ 804.103(c), 804.201, *et seq.* (West, Westlaw through 2023 4th C.S.); *Ehde v. RPM Dining, LLC*, No. 1:22-CV-00870-RP, 2023 WL 11915730, at *2 (W.D. Tex. Jun. 22, 2023); *Dorsett v. Centene Corp.*, No. 4:22-CV-0057, 2022 WL 17069880, at *2 (S.D. Tex. Oct. 26, 2022); *American Access Cas. Co. v. Alcantar*, No. 01-17-00707-CV, 2018 WL 1801658, at *2 (Tex. App.—Houston [1st Dist.] Apr. 17, 2018, no pet.). The parties have not cited and research has not revealed a case addressing whether the plaintiff bears the burden to plead sufficient allegations regarding the long-arm statute as to nonresident defendants who are served with process under a statute other than the long-arm statute. Serving a defendant with process affords a means for the trial court to exercise personal jurisdiction over the defendant. *See City of Tyler v. Beck*, 196 S.W.3d 784, 786–87 & n.1 (Tex. 2006). But if a defendant is served with process under the Business Organizations Code or under the Insurance Code, it is not clear why a plaintiff would have to plead allegations sufficient to support service of process under the Texas long-arm statute. *See Leach v. City Nat'l Bank*, 733 S.W.2d 578, 580–81 (Tex. Civ. App.—San Antonio 1987, no writ) (holding, in appeal from default judgment, that compliance with long-arm statute was unnecessary because defendant was served under Texas Rule of Civil Procedure 106(b)(2), not under the long-arm statute). Nonetheless, we presume that the Trustee had the initial burden to plead allegations sufficient to bring the Insurers within the reach of the Texas long-arm statute.

**\*9** A plaintiff may plead allegations regarding the long-arm statute in either the plaintiff's live petition or in a response in opposition to the special appearance. *See Max Protetch, Inc.*, 340 S.W.3d at 883. In his response the Trustee alleged that the London Market Insurers, Munich, and Century (collectively the "SOS Insurers") consented to the trial court's exercise of personal jurisdiction over them and expressly waived their right to contest personal jurisdiction through the service-of-suit clauses in their respective insurance policies. The

Trustee asserted that American Home, Hartford Casualty, Hartford Fire, and Twin City have consented to the trial court's exercise of personal jurisdiction over them by their "extensive, systematic business conduct in [Texas] over many years." The Trustee also contended that (1) the trial court may exercise personal jurisdiction over the Insurers based on specific jurisdiction because the scope of the risks insured under each policy, the Insurers' obligations to defend Vogt wherever claims are brought, and the Trustee's requests for declaratory relief regarding cases filed in Texas by Texas residents; and (2) the exercise of personal jurisdiction over the Insurers comports with traditional notions of fair play and substantial justice.

The Supreme Court of Texas has stated that the "Texas long-arm statute reaches 'as far as the federal constitutional requirements of due process will allow.' Thus, the Texas long-arm statute requirements are satisfied if exercising jurisdiction comports with federal due process limitations." *American Type Culture Collection, Inc.*, 83 S.W.3d 801, 806 (Tex. 2002) (citations omitted); *accord Vosko v. Chase Manhattan Bank, N.A.*, 909 S.W.2d 95, 98 (Tex. App.—Houston [14th Dist.] 1995, writ denied). The Trustee alleged that some of the Insurers consented to the trial court's exercise of personal jurisdiction based on service-of-suit clauses or by extensive and systematic business conduct in Texas. The Trustee also alleged that the trial court may exercise personal jurisdiction over all the Insurers based on specific jurisdiction. If these allegations are correct, then the trial court's exercise of personal jurisdiction over Munich would comport with federal due process limitations. *See Insurance Corp. of Ireland, Ltd.*, 456 U.S. at 703–04; *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 227–28, 230–32 (Tex. 1991). Therefore, the Trustee satisfied any burden he had to plead sufficient allegations to bring the Insurers within the Texas long-arm statute, and the burden shifted to each of the Insurers to negate all bases of personal jurisdiction that the Trustee alleged against the party in question. *See Old Republic Nat'l Title Ins. Co.*, 549 S.W.3d at 559; *M-I, L.L.C. v. California Res. Corp.*, No. 14-22-00934-CV, 2024 WL 2150094, at *2 (Tex. App.—Houston [14th Dist.] May 14, 2004, no pet.). In the trial court the Trustee alleged the following bases of personal jurisdiction in his petition or in his omnibus response in opposition to the special appearances:

- **Service-of-Suit Clauses as to the SOS Insurers.** The SOS Insurers have service-of-suit clauses in their policies under which these insurers expressly waived the right to contest personal jurisdiction in any court chosen by the plaintiff anywhere in the United States. By means of these clauses the SOS Insurers consented to the trial court's ability to exercise personal jurisdiction over them, agreed to comply with all requirements necessary to give the trial court jurisdiction, and agreed that all matters pertinent to the instant dispute shall be determined by the trial court.

- **Specific Jurisdiction as to Each of the Insurers.** The trial court may exercise personal jurisdiction over each of the Insurers based on specific jurisdiction because of "(1) the scope of risks insured under the Insurers' policies (including the Insurers' defense obligations to [Vogt], wherever claims are brought) and (2) the nexus between Texas and the claims against [Vogt]." Vogt has been and continues to be a defendant in multiple asbestos lawsuits filed in Texas, by Texans, alleging injurious exposure to asbestos in Texas. The Trustee is a Texas resident who filed this suit in Texas to fulfill his duty to marshal the Vogt assets and settle the claims of asbestos claimants and their families, some of whom live in Texas. The trust agreement for the Creditors' Trust contains a choice of law provision providing that the agreement be interpreted under Texas law. A number of the asbestos suits include underlying plaintiffs who are Texas citizens and who allege asbestos exposure in Texas. According to the Trustee, a significant portion of Vogt's asbestos liabilities arise in Texas.

 **\*10** • **General Jurisdiction as to Four of the Insurers**. The trial court may exercise personal jurisdiction over American Home, Hartford Casualty, Twin City, and Hartford Fire (collectively the "Four Insurers") based on general jurisdiction because from 2018 through 2022 these insurers earned premiums in Texas in "eight or nine figure amounts." The Trustee submitted documents showing the premiums earned in Texas by the Four Insurers during this time period. The Trustee asserted that the Four Insurers are subject to the trial court's jurisdiction based on their "continuous and systematic" connections with Texas, including their status as repeat participants in the Texas judicial system.

**C. Did some of the Insurers expressly consent to the exercise of personal jurisdiction over them by the trial court through service-of-suit clauses contained in the insurance policies they issued?**

One of the bases of personal jurisdiction alleged by the Trustee in the trial court was that the SOS Insurers have

service-of-suit clauses in their insurance policies under which these insurers expressly waived the right to contest personal jurisdiction in any court chosen by the plaintiff anywhere in the United States. The Trustee raised the service-of-suit clauses as a basis for personal jurisdiction in the Petition as to the London Market Insurers and in his response as to SOS Insurers.[5] By means of these clauses the Trustee argues that the SOS Insurers expressly consented to the trial court's ability to exercise personal jurisdiction over them in any court chosen by the plaintiff, agreed to comply with all requirements necessary to give the trial court jurisdiction, and agreed that all matters pertinent to the instant dispute shall be determined by the trial court. Either in their special appearances or in their replies, the London Market Insurers and Century sought to negate this basis for personal jurisdiction by arguing that for the service-of-suit clauses to apply there must be a failure of the insurer to pay an amount claimed to be due under the policy and that the Trustee had not alleged any such failure. We presume for the sake of argument that Munich also made this argument in the trial court.

On appeal the London Market Insurers and Century argue that the service-of-suit clauses do not apply because the Trustee has not alleged a failure of the insurer to pay an amount claimed to be due under the policy. We presume for the sake of argument that Munich has timely raised this argument on appeal. In our analysis of this argument, we begin by interpreting the language in these clauses.

The London Market Insurers' policies have the following service-of-suit clause:

> It is agreed that **in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder**, Underwriters hereon, **at the request of the Assured**, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and **all matters arising hereunder** shall be determined in accordance with the law and practice of such Court.[6]

**\*11** The Century and Munich policies have substantially similar service-of-suit clauses.[7] A court generally interprets an insurance policy under the same rules of construction that apply to any other contract. *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 740–41 (Tex. 1998). Applying the ordinary rules of contract construction to insurance policies, the reviewing court ascertains the parties' intent by looking only to the four corners of the policy to see what is actually stated and does not consider what allegedly was meant. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006); *Williams Consolidated I, Ltd./BSI Holdings, Inc. v. TIG Ins. Co.*, 230 S.W.3d 895, 902 (Tex. App.—Houston [14th Dist.] 2007, no pet). If a court can ascertain only one reasonable meaning of the policy provision, the insurance contract is not ambiguous, and the court will enforce it as written. *See Fiess*, 202 S.W.3d at 746; *State Farm Fire & Cas. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex. 1998).

Under the unambiguous language of these clauses, the respective insurer consents to the exercise of personal jurisdiction over the insurer by any court of competent jurisdiction in the United States as to "all matters arising" under the respective policy if (1) the insurer has failed to pay an amount claimed to be due under the insurance policy, and (2) the insured requests that the insurer consent to this exercise of personal jurisdiction. *See Elevation Builders, Inc. v. Companion Specialty Ins. Co.*, No. 15-CV-00490-PAB-KMT, 2015 WL 4159426, at \*3 (D. Co. Jul. 8, 2015); *Morrow Valley Land Co. v. Scottsdale Ins. Co.*, No. 10-5029, 2010 WL 11509313, at \*2–3 (W.D. Ark. May 25, 2010).

On appeal the London Market Insurers assert that the Trustee has not tendered any claims to them or made any demand for payment on them. The London Market Insurers contend that the trial court record establishes that the Trustee has not claimed that any amounts are due under their insurance policies. Century asserts that the Trustee has not sought payment from Century for any alleged coverage and that the Trustee is not alleging any failure to pay by Century. Munich contends that the Trustee has not alleged the Munich failed to pay any amount claimed. Significantly, in the trial court these insurers challenged the sufficiency of the Trustee's pleading —whether the Trustee alleged that they had failed to pay an amount claimed to be due under the insurance policy. However, none of these insurers submitted evidence showing that the insurer had not failed to pay an amount claimed to be due under the insurance policy. Thus, to the extent that one of these insurers asserts in its briefing that it had not failed to

pay an amount claimed to be due under the insurance policy, that is a statement of counsel that is not evidence and that is not relevant on the issue of whether the Trustee pleaded this matter. *See Primis Corp. v. Milledge*, No. 14-08-00753-CV, 2010 WL 2103936, at *3, n.2 (Tex. App.—Houston [14th Dist.] May 27, 2010, no pet.) (mem. op.).

**\*12** To determine whether the Trustee pleaded that these insurers had failed to pay an amount claimed to be due under the insurance policy, we examine the Trustee's live pleading, in which the Trustee alleges:

- The Trustee "seeks only nonmonetary relief" in this lawsuit.

- The Trustee seeks "declarations making these policies and their limits of liability fully available to meet [Vogt's] defense and indemnity costs in the Asbestos Suits as those terms are understood in the insurance business."

- All Insurers are obligated under their respective insurance policies to investigate, defend, reimburse, and indemnify Vogt completely against All Asbestos Suits.

- "The [Insurers], however, have failed or will fail to do so [investigate, defend, reimburse, and indemnify Vogt completely against All Asbestos Suits] fully in numerous respects...."

- The Trustee seeks a determination of the Insurers' obligations to defend, reimburse, and indemnify Vogt in full against the Asbestos Suits.

Construing the pleading liberally in favor of the plaintiff, as we must, the Trustee alleged that (1) the Insurers are obligated under their respective insurance policies to reimburse Vogt, but they "have failed ... to do so fully"; and (2) the Trustee seeks a determination of the Insurers' obligations to reimburse Vogt. [8] *See* Tex. R. Civ. P. 48 (stating that "[a] party may set forth two or more statements of a claim ... alternatively ..., either in one count ... or in separate counts"); *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000); *Ascentium Captial LLC v. Hi-Tech the School of Cosmetology Corp.*, 558 S.W.3d 824, 829 (Tex. App.—Houston [14th Dist.] 2018, no pet.). "Reimburse" means to "repay" a person who has spent or lost money, or to repay a sum that has been spent or lost. *See* NEW OXFORD AMERICAN DICTIONARY 1472 (Angus Stevenson & Christine Lindberg eds., 3d ed. 2010). Therefore, the Trustee alleged that Vogt has already spent money that the respective policy requires

the respective insurer to repay, and although the Trustee claims that the insurer is obligated to repay Vogt under the respective policy, the insurer has failed to pay what it owes in full. Thus, the Trustee has alleged that the SOS Insurers have failed to pay an amount claimed to be due under the respective insurance policy. *See Elevation Builders, Inc.*, 2015 WL 4159426, at *3; *Morrow Valley Land Co.*, 2010 WL 11509313, at *2–3.

The Trustee's filing of suit against the SOS Insurers constituted an implied request that each of these insurers consent to the trial court's exercise of personal jurisdiction over the insurer under the respective service-of-suit clause, and none of these clauses requires that the insurer take any further action to make this request. *See Morrow Valley Land Co.*, 2010 WL 11509313, at *2–3. The allegations in the Trustee's pleading are sufficient to trigger the respective service-of-suit clauses, under which the SOS Insurers consent to the exercise of personal jurisdiction over the insurer by any court of competent jurisdiction in the United States chosen by Vogt as to "all matters arising" under the respective policy, which includes the Trustee's requests for declaratory relief regarding these insurers and their policies. *See Elevation Builders, Inc.*, 2015 WL 4159426, at *3; *Morrow Valley Land Co.*, 2010 WL 11509313, at *2–3.

**\*13** The London Market Insurers and Century argue that the Trustee did not allege that they failed "to pay any amount claimed to be due," because the Trustee seeks only declaratory relief, not monetary relief. This argument conflates the insured's injury with its relief. The injury that triggers the service-of-suit clause is the insurer's failure to pay an amount claimed to be due under the respective policy. As relief for that injury, the insured may seek declaratory relief, "whether or not further relief is or could be claimed." Tex. Civ. Prac. & Rem. Code Ann. § 37.003(a) (West, Westlaw through 2023 4th C.S.). The service-of-suit clauses simply do not require the insured to sue for direct recovery of any unpaid amounts claimed to be due. *See Strauss v. Admiral Ins. Co.*, No. 6:17-CV-480-ORL-31TBS, 2017 WL 2806245, at *1–2 (M.D. Fla. Jun. 29, 2017) (rejecting insurer's argument that similar service-of-suit clause was not triggered because plaintiff sought only declaratory relief that insurer had a duty to defend and indemnify under the policies).

The SOS Insurers also argue that the Trustee's pleadings are inadequate because they are excess insurers, and the Trustee did not plead that the limits of the policies underlying their coverage had been exhausted. But the SOS Insurers

have overlooked the Trustee's allegation that he "has satisfied ... by operation of law or by virtue of [the Insurers'] conduct, all terms and conditions of [the Insurers'] insurance policies, including ... satisfying all deductibles, self-insured retentions, and underlying limits of the policies issued by [the Insurers] ...." The SOS Insurers have not challenged this allegation on legal or factual grounds.

Century also argues that the Trustee is not "the Insured" under Century's policy who can invoke the service-of-suit clause in Century's policy. Century asserts that the Trustee only has authority over claims against Vogt that were pending when the Plan was confirmed on December 31, 2014. Century asserts in its reply brief that under Texas Rule of Appellate Procedure 38.1(g), this court must accept as true the proposition that the Trustee has no authority over claims filed after confirmation of Vogt's bankruptcy because Century made this statement in its opening brief and the Trustee did not contradict this statement in his brief. See Tex. R. App. P. 38.1(g). This rule provides that the appellant's brief "must state concisely and **without argument the facts** pertinent to the issues or points presented" and that "[i]n a civil case, the court will accept as true **the facts** stated unless another party contradicts them." *Id.* (emphasis added). In the statement-of-facts section of its opening brief Century stated that "[t]he Trustee has no authority over claims filed after confirmation of Vogt's bankruptcy." But even presuming that the Trustee did not contradict this statement, under the unambiguous language of Rule 38.1(g), this court must accept as true only "facts stated" by the appellant, unless another party contradicts them. *See id.* The statement on which Century relies is a legal conclusion, not a statement of fact; therefore Rule 38.1(g) does not apply. *See id.*

Century contends that the Trustee only has authority over claims against Vogt that were pending when the Plan was confirmed on December 31, 2014, and that the Trustee may not invoke the service-of-suit clause in Century's policy on Vogt's behalf because the Trustee has not identified any lawsuits against Vogt over which he has authority. The only support Century cites for this argument is a statement made by one of the attorneys representing Vogt during the 2014 confirmation hearing in the Bankruptcy Case. Century quotes the attorney's statement to the trial court, "This isn't [a 524(g) trust]. We're not binding future claimants." But, arguments of counsel and bare assertions are not evidence. *See Fallon v. MD Anderson Physicians Network*, 586 S.W.3d 58, 75 (Tex. App.—Houston [1st Dist.] 2019, pet. denied); *Primis Corp.*, 2010 WL 2103936, at *3, n.2. Thus, no evidence supports

Century's assertions about the limitations on the Trustee's authority. Century's argument also conflicts with the language of the Plan providing that as of the Plan's effective date "the Creditors' Trust and/or the [Trustee for the Creditors' Trust] shall be vested and automatically be conferred with, and have all of the power, authority and standing, and shall be the sole authorized Person with such authority and standing, to take any and all actions that were previously vested in the Debtor or the Estate with respect to the Insurance Policies and shall [ ] automatically be conferred with and have authority and standing, and shall be the sole authorized Person with authority and standing, to take any and all actions that were previously vested in the Debtor, or the Estate and stand in the same position as the Debtor or the estate with respect to any claim the Debtor may have to the Insurance Policies."

**\*14** The allegations in the Trustee's pleading are sufficient to trigger the respective service-of-suit clauses, under which the SOS Insurers consent to the exercise of personal jurisdiction over the insurer by the trial court as to the Trustee's requests for declaratory relief regarding these insurers and their policies. *See Elevation Builders, Inc.*, 2015 WL 4159426, at *3; *Morrow Valley Land Co.*, 2010 WL 11509313, at *2–3. Because the SOS Insurers failed to negate the basis of express consent under the service-of-suit clauses, the trial court did not err in denying the special appearances of the SOS Insurers. *See Ace Ins. Co. v. Zurich American Ins. Co.*, 59 S.W.3d 424, 429 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

**D. Did the trial court err in impliedly denying the Non-SOS Insurers' special appearances on the ground that the court may exercise personal jurisdiction based on specific jurisdiction?**

The Trustee asserted specific jurisdiction as a basis for the trial court to exercise personal jurisdiction over each of the Insurers. We now address whether the trial court erred by impliedly determining that it may exercise personal jurisdiction over American Home, Oakwood, General Re, and the Hartford Parties (collectively the "Non-SOS Insurers") based on specific jurisdiction.

Personal jurisdiction over a nonresident defendant is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state and (2) the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. *See BMC Software*, 83 S.W.3d at 795. For a defendant to have sufficient contacts with the forum, it is essential that there be some act by which the defendant "purposefully avails"

itself of the privilege of conducting activities in the forum state, thus invoking the benefits and protections of its laws. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). In analyzing personal jurisdiction, only the defendant's purposeful contacts with the forum count; personal jurisdiction over a defendant cannot be based on the unilateral activity of another party. *Id.* at 785. A defendant should not be subject to a Texas court's exercise of personal jurisdiction based on random, fortuitous, or attenuated contacts. *Id.* For there to be purposeful availment, a defendant must seek some benefit, advantage, or profit by "availing" itself of the jurisdiction. *Id.*

Specific jurisdiction exists when the claims in question arise from or relate to the defendant's purposeful contacts with Texas. *Am. Type Culture Collection Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002). For a nonresident defendant's contacts with Texas to support an exercise of specific jurisdiction, there must be a substantial connection between the defendant's purposeful contacts with Texas and the operative facts of the litigation. *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007).

In examining the connection between a defendant's purposeful contacts with Texas and the operative facts of the litigation, we review the claims in question and the evidence regarding the jurisdictional facts, but we do not determine the merits of the claims. *See TV Azteca, S.A.B. De C.V. v. Ruiz*, 490 S.W.3d 29, 35 n.1 (Tex. 2016); *Dresser-Rand Group v. Centauro Capital, S.L.U.*, 448 S.W.3d 577, 584 (Tex. App. —Houston [14th Dist.] 2014, no pet.). The merits of the Trustee's claims are not at issue in determining whether the trial court erred in denying the Insurers' special appearances. *See Dresser-Rand Group*, 448 S.W.3d at 584. Thus, though we describe the substance of the Trustee's claims for the purposes of our personal-jurisdiction analysis, we do not adjudicate these claims or weigh their merit. *See id.* at 586, n.4.

### 1. Specific Jurisdiction regarding the Trustee's claims against the Non-SOS Insurers as to lawsuits against Vogt in Texas

**\*15** The Trustee asserts claims against the Insurers seeking only non-monetary, declaratory relief. The Trustee alleges that Vogt has insurance policies that remain responsive to All Asbestos Suits and that he seeks declarations "making these policies and their limits of liability fully available to meet Vogt's defense and indemnity costs in [All Asbestos Suits], as those terms are understood in the insurance business." The

Trustee lists various insurance policies allegedly issued by one of the Insurers and alleges that each of the policies is "responsive to [All Asbestos Suits]." The Trustee contends that all Insurers are obligated under their respective insurance policies to investigate, defend, reimburse, and indemnify Vogt completely against All Asbestos Suits. The Trustee asserts that the Insurers have failed to do so fully in numerous respects. The Trustee seeks a determination of the Insurers' obligations to defend, reimburse, and indemnify Vogt in full against All Asbestos Suits. The Trustee claims that he has satisfied, will be deemed to have satisfied, or has been or will be relieved from satisfying, all terms and conditions of these policies, including without limitation payment of premiums, satisfaction or relief from satisfying all deductibles, self-insured retentions, and underlying limits of these policies, and that the Trustee is entitled to the full benefit of the insurance.

The Trustee alleges that Vogt has been and continues to be a defendant in multiple asbestos lawsuits filed in Texas, by Texans, alleging injurious exposure to asbestos in Texas. According to the Trustee, a significant portion of Vogt's asbestos liabilities arise in Texas. We first address whether the trial court erred by impliedly denying the Non-SOS Insurers' special appearances on the ground that based on specific jurisdiction the court may exercise personal jurisdiction over these insurers regarding the Trustee's declaratory-judgment claims as to asbestos lawsuits filed against Vogt in Texas (collectively "Texas Lawsuits").

#### a. Minimum Contacts

American Home is a New York corporation with its principal place of business in New York, New York. Central National Insurance Company of Omaha was a Nebraska corporation with its principal place of business in Nebraska. In 2014 Central National merged into Oakwood, which is a Tennessee corporation, with its principal place of business in New York. First State is a Connecticut corporation, with its principal place of business in Hartford, Connecticut.[9] General Re is a Delaware corporation, with its principal place of business in Connecticut. Hartford Casualty is an Indiana corporation, with its principal place of business in Hartford, Connecticut. Hartford Fire is a Connecticut corporation, with its principal place of business in Hartford, Connecticut. Twin City is an Indiana corporation, with its principal place of business in Hartford, Connecticut. Vogt is a dissolved Kentucky corporation, whose principal place of business was in Kentucky. The Trustee is a resident of Texas, and the trust

agreement for the Creditors' Trust contains a choice-of-law provision providing that the agreement be interpreted under Texas law.

The Trustee has argued that the trial court may exercise personal jurisdiction over each of the Non-SOS Insurers based on specific jurisdiction because of (1) the scope of risks insured under the Insurers' policies (including the Insurers' defense obligations to Vogt, wherever claims are brought) and (2) the nexus between Texas and the claims against Vogt. The Trustee asserts that the insurance policies at issue have a nationwide reach and that each of the Insurers underwrote risks in Texas when they issued their policies to Vogt. The Non-SOS Insurers have not submitted evidence showing that their policies lack a nationwide reach or that Texas is outside of the coverage area of their policies.

The Trustee alleges that Vogt has been and continues to be a defendant in the Texas Lawsuits. In his response in the trial court the Trustee cited three Texas cases as examples of the Texas Lawsuits. The Trustee also referred to the *Wilkerson* lawsuit and the *Gillespie* lawsuit. The Century Parties submitted evidence showing that in one lawsuit (the *Freed* case), Vogt was a defendant but that the claims against Vogt were non-suited less than a month after Vogt was served with citation. In addition, we accept as true the following facts that Oakwood stated in the statement-of-facts section of its opening brief and that no party contradicted:

   **\*16**  • The 2019 amended petition in the *Valley* case did not name Vogt as a defendant.

   • The *Nolan* lawsuit was filed in August 2018, and five years later Vogt still had not been served.

   • The *Wilkerson* lawsuit was filed in 2012 and was dismissed on December 7, 2018, because unspecified defendants settled.

   • The *Gillespie* lawsuit was closed in 2004. [10]

*See* Tex. R. App. P. 38.1(g). The Trustee was not required to specify all of the Texas Lawsuits in its allegations, and the Trustee said that the three case it cited were only examples of the Texas Lawsuits. In any event, none of the Insurers has submitted evidence controverting the Trustee's allegation that Vogt has been a defendant in asbestos lawsuits filed in Texas or the Trustee's allegation that Vogt continues to be a defendant in asbestos lawsuits filed in Texas.

The Trustee alleges that the Non-SOS Insurers have failed to comply with their obligations under their respective insurance policies to investigate, defend, reimburse, and indemnify Vogt completely against the Texas Lawsuits, and because we do not address the merits of the Trustee's claims, we presume for the purposes of our personal-jurisdiction analysis, that this allegation is true. *See TV Azteca, S.A.B. De C.V.*, 490 S.W.3d at 35 n.1; *Dresser-Rand Group*, 448 S.W.3d at 584.

The Trustee argues that the following connections of his claims with Texas support the trial court's exercise of specific jurisdiction: (1) the Trustee is a Texas resident who filed this suit in Texas to fulfill his duty to marshal the Vogt assets and settle the claims of asbestos claimants and their families; and (2) the trust agreement for the Creditors' Trust contains a choice-of-law provision providing that the agreement be interpreted under Texas law. But these Texas contacts are contacts of parties other than the Insurers rather than the purposeful contacts of one of the Insurers with Texas. *See Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 784. Therefore, we do not consider these contacts in our minimum-contacts analysis. *See id.*

Vogt was a Kentucky entity, and none of the Non-SOS Insurers are incorporated in Texas or have a principal place of business in Texas. We presume that all of the actions of Vogt and the Non-SOS Insurers surrounding the negotiation and formation of the Non-SOS insurance policies occurred outside of Texas. We presume that all the people who handle, process, or manage claims for the Non-SOS Insurers are located outside of Texas. Nonetheless, the Non-SOS insurance policies provide coverage for third-party liability occurring in claims filed in Texas. *See Guardian Royal Exch. Assur., Ltd.*, 815 S.W.2d at 231.

 **\*17**  We accept as true the following facts that Oakwood stated in the statement-of-facts section of its opening brief and that no party contradicted: (1) the insurance policies that Oakwood issued to Vogt make no mention of Texas; and (2) Oakwood is not aware of any asbestos suits currently pending against Vogt in Texas. *See* Tex. R. App. P. 38.1(g). We accept as true the following fact that General Re stated in the statement-of-facts section of its opening brief and that no party contradicted: The Gen Re excess liability policy does not mention Texas. *See id.*

We conclude that the *Guardian Royal* precedent from the Supreme Court of Texas governs our analysis regarding the Trustee's declaratory-judgment claims against the Non-SOS

Insurers as to the Texas Lawsuits (collectively the "Texas Claims"). Therefore, we examine this precedent in detail. Guardian Royal, an English insurer, issued a policy to English China, an English company, providing coverage for English China and its subsidiaries as to third-party liability occurring anywhere in the world. *See Guardian Royal Exch. Assur., Ltd.*, 815 S.W.2d at 225. Southern Clay and Gonzales Clay were each Texas corporations that were subsidiaries of English China (collectively the "Subsidiaries"). *See id.* Although the policy described the Subsidiaries as being located in the "U.S.A.", there was no indication in the policy that the Subsidiaries were Texas corporations or were located in Texas, and Guardian Royal did not know whether English China or the Subsidiaries did business in Texas or sent products to Texas. *See id.* An employee of Southern Clay was killed in an on-the-job accident, and the deceased's family filed wrongful death lawsuits in Texas against the Subsidiaries and other English China entities (the "Defendants"). *See id.* The Lawsuits were settled, and U.S. Fire, a liability insurer of Southern Clay, contributed $600,000 to the settlement. *See id.* The Defendants asserted that Guardian Royal should reimburse U.S. Fire for its settlement contribution because Guardian Royal was the primary insurer. *See id.* Guardian Royal disagreed, asserting that its insurance policy provided coverage only for liability in excess of the coverage provided by U.S. Fire. *See id.* U.S. Fire, as subrogee of the Defendants, filed suit in Texas against Guardian Royal, asserting coverage under the Guardian Royal policy and seeking reimbursement for U.S. Fire's settlement contribution. See *id.* at 225–26, 233. Guardian Royal filed a special appearance challenging the trial court's ability to exercise personal jurisdiction. *See id.* at 226. The trial court granted Guardian Royal's special appearance, and the court of appeals reversed and remanded. *See id.*

The Supreme Court of Texas granted review and applied a specialized minimum-contacts analysis that emphasized foreseeability. See *id.* at 227–28, 231–32. The *Guardian Royal* court stated that, although not determinative, foreseeability is also an important consideration in deciding whether a nonresident defendant has purposely established "minimum contacts" with the forum state. See *id.* at 227. The concept of foreseeability is implicit in the requirement that there be a "substantial connection" between the nonresident defendant and Texas arising from action or conduct of the nonresident defendant purposefully directed toward Texas. *See id.* The high court stated that foreseeability is especially pertinent when the nonresident defendant is an insurance company. *Id.*

In *Guardian Royal* the Supreme Court of Texas relied on opinions from several federal courts of appeals, including *Rossman* and *Eli Lilly*, in which those courts upheld the assertion of personal jurisdiction over insurance companies based primarily upon foreseeability. *See id.* at 227, 231–32 & n.16 (relying on *Rossman* and *Eli Lilly*); *Rossman v. State Farm Mut. Auto. Ins. Co.*, 832 F.2d 282, 286–87 (4th Cir. 1987); *Eli Lilly & Co. v. Home Ins. Co.*, 794 F.2d 710, 720–21 (D.C. Cir. 1986). The Supreme Court concluded that when the nonresident defendant is an insurance company, the minimum-contacts analysis may be based on either "the insurer's awareness that it was responsible to cover losses arising from a substantial subject of insurance regularly present in the forum state" or "the nature of the particular insurance contract and its coverage." *See id.* at 227, 231–32 & n.16. The *Guardian Royal* court based its minimum-contacts analysis on "the nature of the particular insurance contract and its coverage." *See id.* at 231–32 & n.16.

**\*18** The high court noted that when specific jurisdiction is asserted, the plaintiff's claim must arise out of or relate to the nonresident defendant's contacts with the forum state in order to satisfy the minimum-contacts requirement. *See id.* at 227. However, the contact must have resulted from the nonresident defendant's purposeful conduct and not the unilateral activity of the plaintiff or others. *See id.* When specific jurisdiction is asserted, the minimum-contacts analysis focuses on the relationship among the defendant, the forum, and the litigation. *See id.* at 228. The *Guardian Royal* court stated that for Guardian Royal to have purposefully established "minimum contacts" with Texas there must be a "substantial connection" between Guardian Royal and Texas arising from action or conduct of Guardian Royal purposefully directed toward Texas. *See id.* at 230.

The high court noted that the Guardian Royal policy provided coverage for third-party liability occurring anywhere in the world and that the endorsements to the policy (1) extended coverage to the Subsidiaries, (2) extended the definition of "Insured" to include any associated and subsidiary company of English China anywhere in the world, and (3) deleted the policy's geographical limits. *See id.* at 231–32. The *Guardian Royal* court concluded that under these facts and circumstances the nature of the Guardian Royal insurance policy and its coverage were sufficient to establish that Guardian Royal purposefully established "minimum contacts" with Texas, which according to the *Guardian Royal* opinion means that: (1) the plaintiffs' claims against

Guardian Royal arose out of or related to Guardian Royal's contacts with Texas; and (2) a "substantial connection" existed between Guardian Royal and Texas arising from the action or conduct of Guardian Royal purposefully directed toward Texas. *See id.* at 227, 230, 232.

The Supreme Court concluded that as the insurer of English China and its subsidiaries located in many countries in the world including the United States, and as the issuer of an insurance policy providing coverage for third-party liability occurring anywhere in the world, Guardian Royal could reasonably anticipate the significant risk (if not the probability) that a subsidiary would become involved in disputes and litigation in many countries in the world, as well as in any state in the United States. *See id.* at 232. The *Guardian Royal* court stated that Guardian Royal also could reasonably anticipate the significant risk that an insurance coverage dispute or question with a subsidiary would arise concerning the litigation. *See id.* The parties have not cited and research has not revealed a case in which the court abrogates or overrules the Supreme Court of Texas's opinion in *Guardian Royal*, and we are bound to apply this precedent in today's case.

Though Vogt was a Kentucky corporation with its principal place of business in Kentucky, rather than a Texas corporation, the Supreme Court said there was no indication in the Guardian Royal policy that the Subsidiaries were located in Texas and that Guardian Royal did not know whether the Subsidiaries did business in Texas or sent products to Texas. *See id.* at 225. Therefore, we conclude that the fact that the Subsidiaries were Texas corporations located in Texas is not a material distinction. *See id.*

Under *Guardian Royal*, we consider the nature of the Non-SOS Insurers' insurance policies and the coverage under these policies. *See id.* at 227, 231–32. The insurance policies of the Non-SOS Insurers allegedly provide coverage for third-party liability occurring anywhere in the United States. As an insurer of Vogt and the issuer of an insurance policy providing coverage for third-party liability occurring in Texas, each of the Non-SOS Insurers could reasonably anticipate the significant risk that Vogt would become involved in disputes and litigation in Texas. *See id.* at 232. In addition each of the Non-SOS Insurers could reasonably anticipate the significant risk that an insurance coverage dispute or question with Vogt would arise in Texas concerning litigation in Texas. *See id.* Foreseeability is especially pertinent when the nonresident defendant is an insurance company. *Id.* at 227. In addition the

Texas Claims are based on the alleged failure of the Non-SOS Insurers to defend Vogt in the Texas Lawsuits, to indemnify Vogt as to the Texas Lawsuits, and to reimburse Vogt for amounts paid in respect of the Texas Lawsuits. Under these facts and circumstances and under the binding precedent of *Guardian Royal*, we conclude that as to the Texas Claims, the nature of the insurance policies between Vogt and the Non-SOS Insurers and the coverages thereunder are sufficient to establish that the Non-SOS Insurers' purposeful contacts with Texas satisfy the minimum-contacts test as it applies to nonresident insurance companies like the Non-SOS Insurers. *See id.* at 227, 230, 232; *Rossman*, 832 F.2d at 286–87; *Eli Lilly & Co.*, 794 F.2d at 720–21. According to the *Guardian Royal* court this conclusion means that: (1) the Texas Claims arise out of or relate to the Non-SOS Insurers' contacts with Texas; and (2) as to the Texas Claims, a "substantial connection" exists between the Non-SOS Insurers and Texas arising from the action or conduct of the Non-SOS Insurers purposefully directed toward Texas. *See Guardian Royal Exch. Assur., Ltd.*, 815 S.W.2d at 227, 230, 232. Moreover, as to the Texas Claims, the Trustee seeks declarations regarding the Non-SOS Insurers' obligations under the same insurance policies that fulfill the minimum-contacts test; thus, there is a substantial connection between the Non-SOS Insurers' contacts with Texas and the operative facts of the Texas Claims. *See Guardian Royal Exch. Assur., Ltd.*, 815 S.W.2d at 227, 230–32. Therefore, the trial court did not err in impliedly determining that the Non-SOS Insurers have the minimum contacts necessary for the trial court to exercise personal jurisdiction over the Texas Claims based on specific jurisdiction. *See id.* at 227, 231–32; *Rossman*, 832 F.2d at 286–87; *Eli Lilly & Co.*, 794 F.2d at 720–21.

 **\*19** One or more of the Non-SOS Insurers have cited and relied on opinions from either the United States Court of Appeals for the Fifth Circuit or a United States District Court within the geographical jurisdiction of that appellate court. See *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 374 (5th Cir. 2024); *Perez v. Pan Am. Life Ins. Co.*, No. 96-20241, 1996 WL 511748, at \*2 (5th Cir. Aug. 20, 1996) (not designated for publication); *Etienne v. Wartsila N. Am., Inc.*, 667 F.Supp.3d 235, 249–51 (S.D. Miss 2023); *Baird v. Shagdarsuren*, 426 F. Supp. 3d 284, 287–91 (N.D. Tex. 2019); *Lillie v. Stanford Trust Co.*, No. 3:13-cv-3127, 2015 WL 13741930, at \*3–4 (N.D. Tex. Apr. 7, 2015). We are not bound to follow precedent from the courts that authored these opinions. See *Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993). These opinions conflict with the *Guardian Royal* precedent, which does bind this court.

*See id.* In addition, these cases conflict with the opinions of a majority of the United States Courts of Appeals that have addressed this issue. *Compare Shambaugh & Son, L.P.*, 91 F.4th at 374 with *Rossman*, 832 F.2d at 286; *Payne v. Motorists' Mut. Ins. Companies*, 4 F.3d 452, 455 (6th Cir. 1993); *Ferrell v. W. Bend Mut. Ins. Co.*, 393 F.3d 786, 791 (8th Cir. 2005); *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 914 (9th Cir. 1990); *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1288–91 (10th Cir. 2007); *McGow v. McCurry*, 412 F.3d 1207, 1215 (11th Cir. 2005), *abrogated on other grounds, Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249 (11th Cir. 2010); *Eli Lilly & Co.*, 794 F.2d at 720–21.

American Home and General Re also cite an opinion from the United States Court of Appeals for the Seventh Circuit. *See Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878–84 (7th Cir. 2019). As with the Fifth Circuit cases, we are not bound to follow precedent from the Seventh Circuit, and we are bound to follow the *Guardian Royal* precedent. *See Penrod Drilling Corp.*, 868 S.W.2d at 296. In addition, the *Lexington* court distinguished the *Rossman* line of cases on the ground that this line of cases, except for *TH Agric. & Nutrition, LLC*, involved insurers who allegedly had a duty to defend, but the insurers in *Lexington* had the right, but not the duty, to defend the insured. *See Lexington Ins. Co.*, 938 F.3d at 882–83; *TH Agric. & Nutrition, LLC*, 488 F.3d at 1288–91. The *Lexington* court stated that "[t]he absence of a duty-to-defend clause is decisive" and indicated that the result in *Lexington* might have been different if the insurers had owed a duty to defend. *See id.* at 882.

The Non-SOS Insurers also rely on an opinion from the United States District Court of New Jersey for the proposition that the relevant contacts for purposes of determining whether personal jurisdiction exists are those "aris[ing] from the contacts relevant to the formation of the insurance agreement." *Ohio Sec. Ins. Co. v. Premium Food Grp., Inc.*, No. 21-15690 (FLW), 2022 WL 2358425, at *5 (D.N.J. June 30, 2022). We are not bound by this precedent, and it conflicts with cases cited by one or more of the Non-SOS Insurers, in which courts stated that forum contacts relating to the procurement and enforcement of the insurance policy should be considered in the minimum-contacts analysis. *See, e.g., E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 298 (5th Cir. 2020).

### b. Traditional Notions of Fair Play and Substantial Justice

After a court finds the minimum contacts necessary to exercise personal jurisdiction over a nonresident defendant, federal due process requires the court to determine whether the exercise of that jurisdiction comports with traditional notions of fair play and substantial justice. *See Guardian Royal Exch. Assur., Ltd.*, 815 S.W.2d at 228. In deciding this issue, we consider the following factors: (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.[11] *Id.* Only in rare cases will the exercise of personal jurisdiction not comport with fair play and substantial justice when the nonresident defendant purposefully has established minimum contacts with the forum state. *Id.* at 231. Such rare cases generally have involved defendants who are residents of another nation, and none of the Non-SOS Insurers is a resident of another nation. *See Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113–15, 107 S.Ct. 1026, 1033–34, 94 L.Ed.2d 92 (1987); *Guardian Royal*, 815 S.W.2d at 232–33; *Lensing v. Card*, 417 S.W.3d 152, 161 (Tex. App.—Dallas 2013, no pet.); *Juarez v. UPS de Mexico S.A. de C.V.*, 933 S.W.2d 281, 286 (Tex. App.—Corpus Christi 1996, no writ). The Non-SOS Insurers must present a compelling case that the presence of some other considerations would render the exercise of personal jurisdiction unreasonable. *See Guardian Royal Exch. Assur., Ltd.*, 815 S.W.2d at 231.

**\*20** Burden on the Defendant. As to the burden of litigating this case in Harris County, Texas, none of the Non-SOS Insurers argue on appeal that this burden is unreasonable, nor do any of them cite any evidence in the record as to the magnitude of this burden.

Interests of the Forum State. As to Texas's interests in adjudicating the dispute, Texas's regulatory interests are an important consideration in deciding whether the exercise of personal jurisdiction is reasonable. *See id.* at 229. States have a legitimate concern in areas in which the state possesses a manifest regulatory interest such as insurance. *See id.* Traditionally, the regulation of the "business of insurance" has been delegated to the states by the federal government. *See id.* Texas has a special interest in regulating insurance, and Texas courts have implicitly recognized the role of that

interest for the purposes of determining whether a Texas court may exercise personal jurisdiction. *See id.* A state's regulatory interest in a certain area or activity such as insurance is an important consideration in deciding whether the exercise of personal jurisdiction is reasonable, and a state's regulatory interest may establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. *See id.* The Trustee alleges that Vogt has been and continues to be a defendant in multiple asbestos lawsuits filed in Texas, by Texans, alleging injurious exposure to asbestos in Texas, and none of the Non-SOS Insurers have submitted evidence showing that this allegation is incorrect. Based on this allegation the Texas Claims include Texas residents who have tort claims currently pending in Texas against Vogt, and whose effort to obtain compensation for their alleged personal-injury damages might be aided by the declaratory relief sought by the Trustee in the Texas Claims. Due to its interest in regulating insurance, Texas holds a significant interest in adjudicating the Texas Claims. *See id.* American Home and General Re assert that Texas has little interest—and Kentucky has a strong interest— in having its courts exercise personal jurisdiction over this coverage dispute. For the reasons stated above, we conclude that Texas has a significant interest. Though Kentucky has an interest in exercising personal jurisdiction over coverage issues regarding the Texas Lawsuits and involving insurance policies issued to a Kentucky insured, that insured is dissolved and no longer has any operations in Kentucky, and all of the insured's rights to the insurance have been transferred to a Texas trust.

The Plaintiffs' Interest in Obtaining Convenient and Effective Relief. The Trustee has filed the Texas Claims in Texas and therefore believes that it is in its interest to be here. We see no reason to disagree. The trial court's exercise of personal jurisdiction over the Texas Claims would further the plaintiff's interest in obtaining convenient and effective relief.

The Interstate Judicial System's Interest and the Shared Interest of the Several States. As to the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the several states in furthering fundamental substantive social policies, American Home, General Re, and Oakwood contend that the "most logical forum" for this litigation is in a Kentucky state court, where a competing action already is on file. [12] The exercise of personal jurisdiction by courts in one forum is not constitutionally infirm just because a more "logical" forum is available. Thus, this seems to be a *forum non*

*conveniens* argument rather than a due-process argument. According to these Non-SOS Insurers, unlike any Texas court, the Kentucky court has personal jurisdiction over all parties named there because all of the insurers issued policies to a Kentucky-based policyholder and any dispute the Kentucky-based policyholder has arises out of its Kentucky insurance contracts. The Kentucky trial court has not yet determined whether it has subject-matter jurisdiction over the claims in the amended complaint or whether it may exercise personal jurisdiction over these claims, and we have concluded that the Trustee's claims against the SOS Insurers should be litigated in Texas based on service-of-suit clauses in the respective insurance policies. The argument that Texas courts may not exercise personal jurisdiction is not helpful because it presumes the answer to the issue in controversy. The fourth and fifth factors weigh in favor of the reasonableness of Texas courts exercising personal jurisdiction over the Texas Claims.

**\*21** The *Guardian Royal* court decided that the exercise of personal jurisdiction over the claims in that case would not comport with traditional notions of fair play and substantial justice. *See id.* at 232–33. The high court based its conclusion on how burdensome it would be for Guardian Royal, an English insurer, to submit its dispute to a foreign nation's judicial system. The issue in today's case does not involve an international insurer or a foreign nation's judicial system, and the Non-SOS Insurers have not shown that it would be burdensome to litigate the Texas Claims in Texas. Even though U.S. Fire as subrogee brought the claims in Texas in the name of the Defendants, including the Subsidiaries, the *Guardian Royal* court characterized the case as "a dispute between two insurers—Guardian Royal and U.S. Fire as subrogee to the rights of the [Defendants]." *Id.* at 233. Significantly, even though the high court did not rely on the subrogee status in its minimum-contacts analysis, it did so in analyzing fair play and substantial justice. *See id.* This indicates that we may consider the Trustee's status as assignee of the Policies and the associated interests therein, in which case we may consider the fact that the Trustee is a resident of Texas and the Trust is a Texas trust, which weighs in favor of a conclusion that the exercise of personal jurisdiction is reasonable and does not violate traditional notions of fair play and substantial justice. *See id.* The *Guardian Royal* court also noted that U.S. Fire, the real party in interest, was seeking reimbursement for funds contributed toward settlement and that the personal-injury plaintiffs had been compensated and the insureds had been defended and indemnified by U.S. Fire. *See id.* Under the Trustee's uncontroverted pleadings,

personal-injury claims remain pending in Texas, so not all personal-injury plaintiffs have been compensated.

After carefully considering the record and all of the factors in the legal standard, we conclude that none of the Non-SOS Insurers have made a compelling case that the exercise of personal jurisdiction over the Texas Claims would be unreasonable or would violate traditional notions of fair play and substantial justice. *See Amec Foster Wheeler, PLC v. Enterprise Prods. Operating, LLC*, 631 S.W.3d 147, 161–63 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). Therefore, we conclude that the trial court did not err to the extent the court impliedly denied the Non-SOS Insurers' special appearances on the ground that the court may exercise personal jurisdiction as to the Texas Claims based on specific jurisdiction.

### *2. Specific Jurisdiction regarding the Trustee's claims against the Non-SOS Insurers as to lawsuits against Vogt other than the Texas Lawsuits*

We next consider whether the trial court erred to the extent the court concluded based on specific jurisdiction that it may exercise personal jurisdiction over the Trustee's claims against the Non-SOS Insurers as to asbestos lawsuits filed against Vogt other than the Texas Lawsuits (collectively the "Non-Texas Lawsuits"). In *Guardian Royal* the Supreme Court concluded that the nature of the Guardian Royal insurance policy and its coverage were sufficient to establish that Guardian Royal purposefully established "minimum contacts" with Texas in a case in which the Guardian Royal allegedly breached its obligations under the policy by failing to indemnify the Defendants against liability for tort claims filed in Texas and by failing to reimburse U.S. Fire for its contribution to the settlement of the Texas lawsuits. *See Guardian Royal Exch. Assur., Ltd.*, 815 S.W.2d at 225–26, 231–32. In *Guardian Royal*, both the underlying tort claims and the reimbursement claims based on coverage under Guardian Royal's policy were filed in Texas. *See id.* at 225–26. We conclude that asbestos claims filed against Vogt outside the state of Texas do not fall within the scope of the *Guardian Royal* precedent. *See id.* at 225–26, 231–32.

Under the applicable standard of review, we conclude that the Non-SOS Insurers negated the existence of a substantial connection between the purposeful contacts of the Non-SOS Insurers with Texas and the operative facts of the Trustee's declaratory-judgment claims against the Non-SOS Insurers as to the Non-Texas Lawsuits (collectively the "Non-Texas Claims"). *See Moki Mac River Expeditions*, 221 S.W.3d at

585. Therefore, we conclude that the trial court erred to the extent the court impliedly denied the Non-SOS Insurers' special appearances on the ground that the court may exercise personal jurisdiction as to the Non-Texas Claims based on specific jurisdiction. *See id.*

### E. Did the trial court err in impliedly denying the special appearances of four of the Insurers on the basis of general jurisdiction?

In the trial court, the Trustee asserted general jurisdiction as a basis for the trial court to exercise personal jurisdiction over Hartford Casualty, Hartford Fire, Twin City, and American Home (collectively the "Four Insurers"). A court may exercise general jurisdiction over a nonresident corporation whose contacts with the forum state are so continuous and systematic as to render the corporation "essentially at home" in the forum state. *See Daimler AG v. Bauman*, 571 U.S. 117, 127, 139 (2014); *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 565 (Tex. 2018). For a defendant corporation, the paradigm forum for the exercise of general jurisdiction is the place of incorporation and the principal place of business. *Bauman*, 571 U.S. at 137. In an exceptional case, a corporation's operations in a forum other than its place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State. *See Bauman*, 571 U.S. at 139 n. 19. General jurisdiction may be established whether or not the nonresident defendant's alleged liability arises from those contacts. *See Old Republic Nat'l Title Ins. Co.*, 549 S.W.3d at 565. A general-jurisdiction inquiry is very different from a specific-jurisdiction inquiry and involves a more demanding minimum-contacts analysis, with a substantially higher threshold. *Id.* Even if the contacts of one of the Four Insurers with Texas were continuous and systematic, they still would be insufficient to confer general jurisdiction if the contacts fail to rise to the level of making the insurer "essentially at home" in Texas. *See id.*

**\*22** None of the Four Insurers has a place of incorporation or principal place of business in Texas. Thus, the only way for the trial court to exercise personal jurisdiction over one of the Four Insurers would be for the "exceptional case" to apply. *See Bauman*, 571 U.S. at 139 n. 19. In the trial court the Trustee contended that general jurisdiction applies to the Four Insurers because they regularly defend lawsuits in Texas, and they are currently prosecuting civil cases in Texas. The Trustee submitted evidence showing that in 2022: (1) American Home earned more than $39 million in Texas premiums; (2) Hartford Casualty earned more than

$60 million in Texas premiums; (3) Hartford Fire earned more than $154 million in Texas premiums; and (4) Twin City earned more than $236 million in Texas premiums. The Trustee also submitted evidence of similar premium amounts in the previous four years. But the Trustee did not put these premium amounts in the context of the total premiums earned in that year. The Hartford Parties submitted evidence that the 2022 Texas premiums were 5.6% of the total 2022 premiums earned for Hartford Casualty, 10.1% of the total for Hartford Fire, and 8.5% of the total for Twin City. Even taking the Trustee's allegations regarding general jurisdiction over the Four Insurers as true, we conclude that the Four Insurers negated the existence of an "exceptional case" for the application of general jurisdiction and as a matter of law the trial court may not exercise personal jurisdiction over any of the Four Insurers based on general jurisdiction. *See Klein v. Novotny*, C.A. No. 3:15-CV-2885-K, 2017 WL 4083559, *3–4 (N.D. Tex. Aug. 22, 2017); *Old Republic Nat'l Title Ins. Co.*, 549 S.W.3d at 565. To the extent the trial court concluded it may exercise personal jurisdiction over any of the Four Insurers based on general jurisdiction, the trial court erred. *See Klein*, 2017 WL 4083559, *3–4; *Old Republic Nat'l Title Ins. Co.*, 549 S.W.3d at 565.

## III. CONCLUSION

As a matter of law and under the unambiguous language of Section 9.202 and chapter 9 of the Code, by registering to do business in Texas the Registered Insurers did not impliedly consent to the exercise of personal jurisdiction over them by Texas courts in all cases filed in Texas. The Trustee satisfied any burden he had to plead sufficient allegations to bring the Insurers within the Texas long-arm statute, and the burden shifted to each of the Insurers to negate all bases of personal jurisdiction that the Trustee alleged against the party in question. Because the SOS Insurers failed to negate the basis of express consent under the service-of-suit clauses, the trial court did not err in denying the special appearances of the SOS Insurers. The trial court did not err to the extent the court impliedly denied the Non-SOS Insurers' special appearances on the ground that the court may exercise personal jurisdiction as to the Texas Claims based on specific jurisdiction. The trial court erred to the extent the court impliedly denied the Non-SOS Insurers' special appearances on the ground that the court may exercise personal jurisdiction as to the Non-Texas Claims based on specific jurisdiction. To the extent the trial court concluded it may exercise personal jurisdiction over any

of the Four Insurers based on general jurisdiction, the trial court erred.

We overrule the London Market Insurers' two appellate issues, overrule Century's three issues, overrule Munich's appellate issue, and affirm the trial court's order to the extent that the trial court denied the special appearances of each of the London Market Insurers, Century, and Munich. As to the first issue of American Home and General Re we overrule the issue to the extent these parties challenge the trial court's denial of their special appearances as to the Texas Claims, and we sustain the issue to the extent they challenge the trial court's denial of their special appearances as to the Non-Texas Claims. [13] We affirm the trial court's order to the extent the trial court denied the special appearances of American Home and General Re as to the Texas Claims. We reverse the trial court's order to the extent the trial court denied the special appearances of American Home and General Re as to the Non-Texas Claims, and we remand to the trial court with instructions to issue an order dismissing these claims for lack of personal jurisdiction.

As to the Oakwood's second issue, we overrule the issue to the extent Oakwood challenges the trial court's denial of its special appearance as to the Texas Claims, and we sustain the issue to the extent Oakwood challenges the trial court's denial of its special appearance as to the Non-Texas Claims. [14] We affirm the trial court's order to the extent the trial court denied Oakwood's special appearance as to the Texas Claims. We reverse the trial court's order to the extent the trial court denied Oakwood's special appearance as to the Non-Texas Claims, and we remand to the trial court with instructions to issue an order dismissing these claims for lack of personal jurisdiction.

 **\*23** As to the Hartford Parties' sole issue, we overrule the issue to the extent the Hartford Parties challenge the trial court's denial of their special appearances as to the Texas Claims, and we sustain the issue to the extent the Hartford Parties challenge the trial court's denial of their special appearances as to the Non-Texas Claims. We affirm the trial court's order to the extent the trial court denied the Hartford Parties' special appearances as to the Texas Claims. We reverse the trial court's order to the extent the trial court denied the Hartford Parties' special appearances as to the Non-Texas Claims, and we remand to the trial court with instructions to issue an order dismissing these claims for lack of personal jurisdiction.

**All Citations**

--- S.W.3d ----, 2025 WL 1033951

---

**Footnotes**

1       The total number of plaintiffs declined between 2004 and 2012 due largely to the dismissal or withdrawal of large groups of plaintiffs in a few states.

2       The Republic of Maldives is a country consisting of various islands in the Indian Ocean and located more than 10,000 miles away from Houston, Texas.

3       The Trustee does not assert that First State or the London Market Insurers consented to personal jurisdiction under Section 9.202. Nonetheless, in a footnote in his appellate brief, the Trustee asserts that although First State and the London Market Insurers have not registered to do business in Texas under chapter 9, they are still covered by Section 9.202 as "foreign nonfiling entities" because they are not required to, and have not, registered to do business in Texas under chapter 9. This argument proves too much. Though this status would make these entities "foreign nonfiling entities" subject to Section 9.202, this point shows that the Trustee's interpretation of Section 9.202 is unreasonable.

4       Because we reject the Trustee's interpretation of chapter 9 of the Code, we do not address the Century Parties' argument that if we were to agree with the Trustee's statutory interpretation then chapter 9 would violate the dormant Commerce Clause of the United States Constitution.

5       On appeal the Trustee asserts that the London Market Insurers, Century, Oakwood, and Munich have service-of-suit clauses in their insurance policies. The inclusion of Oakwood in this group on appeal may have been inadvertent because it results from the Trustee's definition of "Century" in his appellate brief to include both Century and Oakwood. In any event the Trustee did not assert a service-of-suit clause as a basis for personal jurisdiction against Oakwood in the trial court. Therefore, we may not use any service-of-suit clause as a basis for affirming the trial court's order denying Oakwood's special appearance. *See Old Republic Nat'l Title Ins. Co.*, 549 S.W.3d at 559.

6       Emphasis added. The London Market Insurers' policies do not contain any arbitration provision.

7       The Century policy has the following service-of-suit clause:

"It is agreed that **in the event of the failure of the Company hereon to pay any amount claimed to be due hereunder,** the Company hereon, **at the request of the Insured**, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and **all matters arising hereunder** shall be determined in accordance with the law and practice of such Court." (emphasis added).

The Munich policies have the following service-of-suit clause:

"It is agreed that in **the event of the failure of the Company to pay any amount claimed to be due hereunder**, the Company, **at the request of the Insured**, will submit to the jurisdiction of any Court of Competent Jurisdiction within the United States and will comply with all the requirements necessary to give

such Court jurisdiction and **all matters arising hereunder** shall be determined in accordance with the law and practice of such court." (emphasis added).

None of these policies contains an arbitration provision.

8 The London Market Insurers and Century assert that an insurer's denial that it has an obligation to indemnify an insured is not a failure to pay an amount claimed to be due. We do not rely on the denial by that SOS Insurers that they have an obligation to indemnify Vogt.

9 In the Petition the Trustee alleges that First State issued a single policy to Vogt in 1977, but First State and the Trustee have been unable to locate a copy of the alleged policy.

10 In its reply brief Oakwood asserts that this court must accept as true the following facts under Texas Rule of Appellate Procedure 38.1(g): "There are no currently pending claims against [Vogt] in Texas, and there were none as of the date of [the Trustee's] Petition." *See* Tex. R. App. P. 38.1(g). Under this rule we will accept as true the facts stated in the statement-of-facts section of an appellant's opening brief unless another party contradicts them. *See id.* (stating that "[i]n a civil case, the court will accept as true the facts stated unless another party contradicts them"). In the statement-of-facts section of Oakwood's opening brief Oakwood does not state that there are no currently pending claims against Vogt in Texas, nor does Oakwood state that there were no such claims as of the date of the Trustee's Petition. Therefore, we will not accept either of these statements as true under Rule 38.1(g).

11 When the defendant is a resident of another nation, we also consider (a) the unique burdens placed on the defendant who must defend itself in a foreign legal system, (b) the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction by a state court, and (c) the federal government's interest in its foreign-relations policies. *See Guardian Royal Exch. Assur., Ltd.*, 815 S.W.2d at 229. Because none of the Non-SOS Insurers is a resident of another nation, we do not consider these factors.

12 In April 2023, several of the defendants in this case filed suit in Kentucky state court naming Vogt by and through the Trustee as the defendant and the other defendants in this case as nominal defendants ("Kentucky Case"). The plaintiffs in the Kentucky Case sought declaratory relief as to whether certain insurance policies apply to asbestos claims against Vogt. In January 2024 the trial court in the Kentucky Case granted Vogt's motion to dismiss for lack of subject matter jurisdiction. In August 2024 the trial court in the Kentucky Case granted the plaintiffs' motion for leave to amend their complaint to cure the deficiencies that lead the trial court to dismiss the plaintiffs' claims for lack of subject-matter jurisdiction. The Trustee then filed a motion to dismiss the amended complaint for lack of subject-matter jurisdiction and for lack of personal jurisdiction.

13 We need not and do not address their second issue.

14 We need not and do not address Oakwood's first issue.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Carey Wallick on behalf of Laura Prather
Bar No. 16234200
carey.wallick@haynesboone.com
Envelope ID: 99496833
Filing Code Description: Other Document
Filing Description: Yelp's Fourth Notice of Supplemental Authority
Status as of 4/10/2025 9:53 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Lori Mitchell | | Lori.Mitchell@haynesboone.com | 4/10/2025 8:54:51 AM | SENT |
| Robert Farquharson | 24100550 | rob.farquharson@oag.texas.gov | 4/10/2025 8:54:51 AM | SENT |
| Laura Prather | | laura.prather@haynesboone.com | 4/10/2025 8:54:51 AM | SENT |
| Pauline Sisson | | pauline.sisson@oag.texas.gov | 4/10/2025 8:54:51 AM | SENT |
| Michael Lambert | | michael.lambert@haynesboone.com | 4/10/2025 8:54:51 AM | SENT |
| Carey Wallick | | carey.wallick@haynesboone.com | 4/10/2025 8:54:51 AM | SENT |
| Hannah Keck | | hannah.keck@haynesboone.com | 4/10/2025 8:54:51 AM | SENT |
| Scott Froman | | Scott.Froman@oag.texas.gov | 4/10/2025 8:54:51 AM | SENT |
| Christopher Molak | | christopher.molak@oag.texas.gov | 4/10/2025 8:54:51 AM | SENT |
| Matthew T.Kennedy | | matt.kennedy@oag.texas.gov | 4/10/2025 8:54:51 AM | ERROR |
| Emily Samuels | | emily.samuels@oag.texas.gov | 4/10/2025 8:54:51 AM | SENT |
| Abby Smith | | abby.smith@oag.texas.gov | 4/10/2025 8:54:51 AM | SENT |